## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

DELROY A. CHAMBERS, JR.,

      Plaintiff,

v.

SHARON BERCOVICZ, doing business as
GALLERIA HOMES REALTY,

      Defendant.

_____/

## COMPLAINT
### and
### JURY DEMAND

Plaintiff, Delroy A. Chambers, Jr., by and through his undersigned attorneys, files this Complaint for injunctive and declaratory relief, damages, costs, and attorneys' fees against Defendant, Sharon Bercovicz, doing business as Galleria Homes Realty, and as good grounds states as follows:

### PRELIMINARY STATEMENT

1.    This action arises as a result of Defendant's discriminatory actions perpetrated against Black people with respect to the rental of a home in Coral Springs, Florida (the "Dwelling").

2.    Specifically, Defendant has violated the Fair Housing Act by, among other things, otherwise making unavailable and denying the Dwelling to Mr. Chambers because of race.

### JURISDICTION AND VENUE

3.    Jurisdiction is invoked pursuant to 42 U.S.C. § 3613(a), in that Plaintiff asserts his claims of housing discrimination in a civil action, and also pursuant to 28 U.S.C. §§ 1331, 2201

and 1343(a)(4), in that this is a civil action seeking to redress the deprivation of the right to fair housing secured to Plaintiff by the Fair Housing Act.

4.      Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff seeks permanent injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the subject property is located in this district, the events and/or omissions giving rise to the claims herein occurred in this district, and the Defendant's principal place of business is in this district.

## PARTIES

6.      Plaintiff, Delroy A. Chambers, Jr., is a Black male that serves as a fair housing tester who seeks to enforce fair housing laws so that people are protected from discriminatory housing practices.  Mr. Chambers attempts to accomplish these goals by engaging in testing for fair housing violations and pursuing enforcement of meritorious claims, among other things.  In this capacity, Mr. Chambers poses as a renter or purchaser for the purpose of collecting evidence of discriminatory housing practices, without intent to rent or purchase a home.  At all relevant times, Mr. Chambers was acting in this capacity as a tester when he conducted an investigation into the discriminatory actions perpetuated by Defendant.

7.      As a fair housing tester and advocate dedicated to advancing the rights of those historically discriminated against, Mr. Chambers attempts to locate housing providers and advertisers in order to test their compliance with various fair housing laws.  Mr. Chambers conducts such testing efforts consistent with the guidance and instructions outlined by the U.S. Department of Housing and Urban Development (HUD), housing advocacy groups, and established case law.

8.      Mr. Chambers is deeply committed to fair housing and the goals of the Fair Housing Act.  Mr. Chambers was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendant.

9.      Defendant, Sharon Bercovicz, doing business as Galleria Homes Realty, is a registered real estate broker and is engaged in the business of real estate.

**FACTUAL ALLEGATIONS**

10.      While investigating discrimination in the housing market in August 2020, Mr. Chambers encountered an advertisement for the Dwelling.  The advertisement stated, among other things, "must have 600 or better credit and clean background" as requirements for tenancy.

11.      The advertisement further indicated that the Dwelling was listed by Galleria Homes Realty.

12.      As part of Mr. Chambers's fair housing testing efforts described above, Mr. Chambers, posing as a potential renter, attempted to negotiate for the rental of the Dwelling with the Defendant by confirming the availability of the Dwelling.  Defendant responded by email, confirmed the availability of the Dwelling, and invited Mr. Chambers to contact Defendant by text message.

13.      Mr. Chambers then continued the test by texting Defendant and asking for additional details about Defendant's "clean background" policy that was noted on the advertisement, and inquiring whether any criminal background would result in a denial of the Dwelling, as a result of the policy.

14.      Defendant responded and confirmed that the Dwelling was subject to a "clean background" policy that would result in an automatic denial of the Dwelling to anyone with any

criminal background.  Defendant added, unprompted, that the policy originated from the housing association associated with the Dwelling.

15.     In so responding, Defendant did not ask whether Mr. Chambers's criminal background involved any convictions or only arrests, and instead stated and confirmed that Mr. Chambers would be denied the Dwelling, based on a policy that constitutes an automatic denial for any potential renters with *any* criminal background.

16.     Therefore, Defendant ceased negotiating with Mr. Chambers regarding the Dwelling, and otherwise made the Dwelling unavailable and denied the Dwelling to him, based on a criminal background policy that takes arrests into consideration and includes a blanket prohibition serving to refuse rental of the Dwelling to any person with any criminal background, regardless of what the underlying conduct entailed, or whether any convictions had ever resulted from any accused conduct.

17.     These statements clearly indicate that the rental of the Dwelling is subject to a blanket prohibition serving to refuse rental of the Dwelling to any person with any criminal background, including arrests, which is unlawful under the Fair Housing Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

18.     Such actions and statements serve to discourage Mr. Chambers from applying, inspecting and renting the Dwelling; and restrict the choices of Mr. Chambers by word or conduct in connection with seeking, negotiating for, renting the Dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development.  As such, these actions constitute efforts to deprive Mr. Chambers of housing opportunities.

19.     HUD has found that "where a policy or practice that restricts access to housing on the basis of criminal history has a disparate impact on individuals of a particular race … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider."  *See* HUD, "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" (April 4, 2016).

20.     According to recent data, studies and HUD findings, Black people are arrested, convicted, and imprisoned at vastly disproportionate rates in Florida and the country as a whole. As such, Defendant's policy actually and predictably result in a disparate impact to Black people.

21.     HUD has found that "[a] housing provider with a policy or practice of excluding individuals because of one or more prior arrests (without any conviction) cannot satisfy its burden of showing that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest."  *Id*.

22.     As such, Defendant's actions in refusing to negotiate with Mr. Chambers and making the Dwelling unavailable to Mr. Chambers and denying it to him based on a "clean background" policy that includes a blanket prohibition which takes arrests into consideration is unlawful under the Fair Housing Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

23.     Mr. Chambers was angered and insulted that Defendant was making the Dwelling unavailable to him and denying it to him based on its "clean background" policy, which takes arrests into consideration.

24.     As a Black person who has been the subject of discrimination throughout his life, Mr. Chambers is particularly sensitive to discriminatory practices.  Mr. Chambers was insulted

and emotionally distressed by being denied housing based on a blanket "clean background" policy, which takes arrests into consideration, and by being subjected to such discriminatory policies.

25.     Mr. Chambers was and is saddened, angered, and insulted by the fact that the Defendant refused to negotiate and otherwise made unavailable and denied the Dwelling to him based on a criminal background policy that has a discriminatory impact and serves no substantial, legitimate, nondiscriminatory interest. Mr. Chambers has spent a significant amount of time thinking about what occurred and all the other Black people who may have had housing made unavailable to them by Defendant based on the criminal background policy that includes a blanket prohibition and takes arrest history into consideration, and while doing so, has felt the aforementioned emotions.

26.     Defendant's unlawful conduct proximately caused Mr. Chambers to suffer the aforementioned emotions, which have manifested into stress, unpleasant rumination, mental strain, and feelings of indignity, hopelessness and anxiety about race discrimination in housing.

27.     Consistent with his fair housing testing efforts, Mr. Chambers has a practice of continuing to monitor and test those entities and individuals found to have been discriminating. To those ends, Mr. Chambers has and will continue monitoring Defendant and its agents in order to determine its ongoing compliance with the Fair Housing Act, and will continue to do so throughout the pendency of this matter and after its conclusion.

## COUNT 1:
## VIOLATION OF THE FAIR HOUSING ACT

28.     Plaintiff repeats and realleges paragraphs 1 through 27 as if fully set forth herein.

29.     This Count 1 is brought by Plaintiff against the Defendant, Sharon Bercovicz, doing business as Galleria Homes Realty.

30.     Defendant is liable to Plaintiff for all injuries caused by the Fair Housing Act violations committed by Defendant, and its agents.

31.     Defendant, Sharon Bercovicz, doing business as Galleria Homes Realty, authorized its agents to act for it when they committed the Fair Housing Act violations alleged herein.  Defendant's agents accepted the undertaking of acting on behalf of Defendant, Sharon Bercovicz, doing business as Galleria Homes Realty, when they committed the Fair Housing Act violations alleged herein.  Defendant, Sharon Bercovicz, doing business as Galleria Homes Realty, had control over its agents when they committed the Fair Housing Act violations alleged herein.

32.     Defendant has violated the Fair Housing Act by, among other things, otherwise making unavailable and denying the Dwelling to Mr. Chambers because of race.

33.     A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendant's aforementioned discriminatory actions and/or omissions.

34.     As a result of Defendant's discriminatory conduct - committed despite being engaged in the business of real estate, coupled with Plaintiff's ongoing monitoring efforts - Plaintiff has suffered, is continuing to suffer, and will in the future suffer irreparable loss and injury and a real and immediate threat of future discrimination by Defendant.

35.     Defendant's unlawful conduct and actions constitute direct evidence of discrimination and proximately caused Plaintiff's damages as described above.

36.     In engaging in this unlawful conduct described above, Defendant acted recklessly or intentionally.  This is evidenced, in part, by the fact that Defendant is engaged in the real estate business, and despite that fact, chose to engage in unlawful discrimination.

37.     As a tester who has been treated in a discriminatory fashion by Defendant, Mr. Chambers has suffered an injury in precisely the form the Fair Housing Act was intended to guard against, and therefore he has standing to maintain his claims under the Act's provisions.

38.     Accordingly, Plaintiff is aggrieved by Defendant's discriminatory actions in violation of the Fair Housing Act.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      declare the actions, omissions, policies, and procedures of Defendant, complained of herein to be in violation of the Fair Housing Act;

B.      enter a permanent injunction enjoining Defendant, its successors, and its servants, agents and employees, and all those acting in concert with it, from engaging in discrimination based on race;

C.      enter a permanent injunction compelling Defendant, its successors, and its servants, agents and employees, and all those acting in concert with it, to amend any and all policies, procedures and practices, which discriminate against persons based on race;

D.      award compensatory damages to Plaintiff against Defendant, to compensate Plaintiff for, among other things, the emotional distress, anger, insult and injury caused by Defendant's discriminatory actions;

E.      award Plaintiff his costs and reasonable attorneys' fees in this action; and

F.      award Plaintiff such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable in this matter.

Respectfully submitted,

Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com
Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com

Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, Florida 34698
(202) 709-5744
(866) 893-0416 (Fax)

Attorneys for the Plaintiff


By:   *s/ Joshua A. Glickman*
          Joshua A. Glickman, Esq.